Good morning. May it please the court. My name is George Herides, appearing on behalf of Petitioner Dalvir Singh. This is a streamlined case where the board affirmed without opinion the decision of the immigration judge to deny petitioner's applications for asylum, withholding of removal, and conviction against torture relief pursuant to an adverse credibility finding. Petitioner argues that the immigration judge's decision is not supported by specific or cogent reasons, and asks that this court remand his case for further adjudication of his applications for relief after finding that the IJ's decision is not supported by substantial evidence. The first basis upon which the immigration judge relied in arriving at an adverse credibility finding centered around petitioner's first arrest, in which he testified on direct examination that he was arrested, I believe, on September the 21st, 1995, but did not mention that he had been arrested along with his father-in-law, which was brought out during cross-examination. Petitioner submits that it is reasonable that he omitted that piece of evidence in that particular fact in his direct testimony because it is collateral to his asylum claim. In point of fact, his father-in-law was not politically active, was only held in detention for one day, and Petitioner and his father-in-law were kept in separate cells, and Petitioner did not witness any mistreatment that he suffered. I think all of this is in your brief, isn't it? Your Honor, I believe it is. Okay. And I take it your basic general argument from your brief is that these inconsistencies do not go to the heart or core of the claim. Is that right? Yes, Your Honor. They're either trivial in nature or they're collateral to the claim and do not go to the heart of the claim. Why don't we do this? Why don't we understand your argument in that regard? Why don't we hear from the government? They can explain to us why the government, the Attorney General, believes these inconsistencies go to the core, and then you can respond and rebuttal in any way you wish because you'll have plenty of time to do that. That's fine with me, Your Honor. Thank you. Thanks for coming in today. We'll hear from the Attorney General at this time.  Jeffrey Buchholz, the Respondent. Good morning. The heart of the claim is the heart of the issue here. There are cases where there is a coherent, consistent core of credible testimony, and then there are peripheral matters as to which there may be inconsistencies or even or discrepancies or omissions or questions. This is not that case. The core of this claim is the petitioner's testimony that the last straw for him was his arrest on June 28, 2000. He was arrested twice before, he says, but neither of those arrests or the mistreatment that he says he suffered after them caused him to feel like he needed to flee India, to seek asylum here, reduce his political activities, or anything like that. But the core of his claim is, both from the front end and the back end, the June 28, 2000 arrest. From the front end, I say that because his testimony is that he was an organizer, not just someone who showed up that day, but an organizer of the rally or sit-in or it's not clear exactly what it was. The event. The event. Fair enough. So as an organizer of the event, it's fair to expect him to be able to tell a coherent and consistent and persuasive story about his involvement in what occurred. Is it also true that he claimed to have been hiding at that point and yet he came out to lead this event? Your Honor is correct that there is also a discrepancy in the record about whether a petitioner was in hiding at that point. But even if, and I'd like to get to that along with certain other more discreet discrepancies, but even if you assume that the petitioner adequately explained the discrepancy about when he was in hiding, you still have the petitioner's failure to provide anything approaching a complete, coherent, persuasive account of what happened in connection with the June 28 event. And not only is it fair to expect him to do so given that he was, according to him, an organizer of the event, so therefore something that would be important to him, but from the back end as well because his account is that's what drove him over the edge and convinced him he had to flee India and drove him into hiding, according to his testimony, although not his application. So that's the signal event. That's the heart of his claim, if there is a heart to it. And if you look at the record, pages 90 to 100, AR 90 to 100, the only conclusion that I think one can draw from that colloquy is the one the IJ drew, which is that the petitioner's testimony was hopelessly confused. And you can't tell from that testimony whether a petitioner, whether there was an event and a petitioner got arrested at it, whether there was planning for an event, a petitioner got arrested because his planning for it became known, whether there was an event and he was arrested later in retaliation for it, if there was an event, where it was, what it was, why it was held, you just can't tell any of that from the record. So the immigration judge quite properly said this is the core of the petitioner's claim, if his claim is true, and yet he can't tell me anything about what happened or why or what his involvement was. And there also are, and to get back to the question that yes. Kagan. Were his confusions insofar as they were date confusions, confusions just as to what the dates were or as to the order of events, what happened in what order? I don't think it's possible. I'm sorry. I think that's of great importance, whether he was wrong about whether something happened in March or June or whether he was wrong about whether something happened before or after something else. I think it's hard for the record to even say what he was right about and what he was wrong about because you can't tell what he's saying. At one point he says that the event in August of 2000 was, or the event that was being planned then, was in relation to the death of 36 Sikhs. At another point he says that it was in commemoration of the death of thousands of Sikhs in the attack many years before on the Golden Temple. And I don't know which of those his account is. There's an account, part of his testimony suggests that the event was going to be a march from the Punjab to Jammu and Kashmir. Part of the testimony suggests that it was going to be a sit-in, but it's not clear where. Part of the testimony suggests that it was an event closer to home in Punjab. And I just, I don't know from the record what even his story is to say which part of it was right and which part of it is inconsistent with which other part. So, which brings me to the fundamental point given the standard of review. There are cases, as I said, where there is a consistent, coherent core and then there are minor discrepancies on the periphery. But this is not that case. The standard of review of substantial evidence means, as this Court said in Chebchub, among other cases, that where the immigration judge, who is the fact finder, doesn't know what to believe, because the alien has the burden of proof, if the immigration judge doesn't know what to believe, that means that the alien loses. And so it's not just the case that where the record conclusively demonstrates that the alien is incredible, that the alien loses under this Court's standard of review. But it's also the case that where the immigration judge doesn't know what the real facts are, what the real truth is, that the immigration judge quite properly can say, I don't find that the petitioner has presented credible testimony. It's not the immigration judge. Back to my little fixation of the day. There were also a lot of things that the IJ said that he was very firm about and concerned about in basing his adverse credibility determination that just don't make any sense, like this difference between being against a calistander and being for a calistander. It was clearly that he was misspeaking. The difference between he hurt his arm or he hurt his hand can't possibly be of any significance. This thing about the father-in-law and the father, when it seemed pretty plain that they were talking about the father-in-law. There was just a series of things that he just couldn't hold up at all, even if there were one or two fairly major ones that would hold up. So what do we do with that? I think, first of all, I don't agree that all of those specific discrepancies are as minor as Your Honor suggests. But to put that question aside for a second and taking the question as asked, I think the answer is the core of this petitioner's claim is what happened in June 2000 to supposedly drive him to flee India, to go into hiding. Kagan. I mean, you would say, looking at it the way I was suggesting before, that is, as a harmless error sort of approach, that the big stuff holds up. Yes, exactly. Because the question isn't is there substantial evidence to support each of six independent, specific fact findings. This isn't a 52, Rule 52, clearly erroneous review of fact findings in the civil context. This is a substantial evidence review of the finding of adverse credibility on the record as a whole. And if there is substantial evidence to support that finding, then this Court, under the governing standard of review, has to deny the petition for review, even if not everything that the IJ said is persuasive. And where there is a significant discrepancy as to the core of the claim, as there is here, I don't think it's relevant whether there also is or isn't a discrepancy as this Court would see it on these other four district areas. But do you understand our case law to say that if any one holds up, that's good enough? As opposed to as if the substantial important ones hold up? Your Honor, I don't read the Court's case law to say that if any one of any number of cited discrepancies holds up, then as a matter of law, the petition for review is denied. I don't think that the analysis can proceed that way. I think it has to be a totality of the evidence, a totality of the circumstances analysis. The substantial evidence standard of review is brought to bear on the overall adverse credibility finding, not on a particular subsidiary finding. So even if, so there are cases where there could be one that is, one discrepancy or inconsistency that is significant enough, as here, I think, even if the Court thought the only consistency or discrepancy here was the one related to the August 2000 matter, that that one would be significant enough that the Court wouldn't really have to think about the other ones or reach them in a decision. There are cases where that might not be true. It just depends on what the totality of the evidence is. One other point that I wanted to make here, though, is a lot of the cases that the petitioner relies on, like Garovias and Smolniakova, the petitioner sent a 28J in, these are cases where this Court said it's not fair to hold against the petitioner, that the petitioner didn't succeed in presenting a coherent, persuasive account that was deemed credible because the IJ didn't let him. In those cases, this Court held that the IJ had interfered with the testimony, had insulted the petitioner, had been insensitive, had been bullying, et cetera. And so the fact that the petitioner had not carried his burden of presenting a coherent, persuasive case was not something that could fairly be held against the petitioner. That's not true here. In this case, this Court reads the transcript. The Court will see that the immigration judge was patient, was open-minded. The petitioner testified at great length. Unlike in a lot of cases, the immigration judge did not ask very many questions. And when he did ask questions, it was not in a hostile tone. And as often as not, it was designed to try to help the petitioner. When the petitioner testified, perhaps inadvertently, who knows that he had been arrested because he was making propaganda against Khalistan, the immigration judge stopped, went back to that and said, you just testified that you were arrested for making propaganda against Khalistan and gave the petitioner an opportunity to correct that. The point is, this is not a case where the petitioner can be excused from failing to carry his burden of proof to present a credible case because of immigration judge misconduct. This transcript reflects a patient, open-minded immigration judge who allowed the petitioner to testify at length and who simply found the petitioner not to have presented a credible case because of inconsistencies at the heart of his story. Okay. Thank you, Your Honor. Thanks for your argument. Thanks for coming in today. We'll hear a rebuttal at this time. Thank you, Your Honor. Let's start with the events. I think it is the event or events of June 28, 2000. Counsel for the Attorney General I think accurately says that your client says, this is the trigger event that caused him to leave India. Well, Your Honor, I would submit that all three arrests played a significant role in his decision. But it is correct that in his application and in his testimony he said, the other events had some impact, but this is the event that caused me to leave. Yes, Your Honor. He went into hiding and he left India after his third arrest. I would only submit, however, that the immigration judge did not particularly emphasize this aspect of petitioner's testimony when he arrived at an average credibility finding. But it is the core of the claim, isn't it, or one of them? Yes, it is, Your Honor. And I would submit, however, that here the petitioner testified unequivocally and in a straightforward manner that and was consistent with his assignment application when he testified that he participated in, that he was planning, that he was participating in the planning of a rally or a demonstration that would occur as a way of protesting the killing of Sikhs at the Sikh Golden Temple in 1984 to the Golden Star operation. He mentioned as a collateral detail that the reason, or the way I read the record, that the reason he was being held in Jammu Kashmir was because of the killing of 36 Sikhs that had happened there prior to the demonstration. Now, he got the date wrong and he independently attempted to correct himself, to clarify. He had the date wrong. He had the reason for the event wrong. He kept changing that. He seemed quite. On page 90 of the record, Your Honor, I think he does testify at the very outset that On page 91, I apologize. Sir, this is pretty much towards the top of page 91 of the record. Petitioner's counsel to the petitioner. Sir, why they gathered at your village, Gurdwara? Answer, because thousands of Sikhs in 1984 were killed by the Sikhs, and we, and I think that was a mistake, and we had this gathering planned to pay tribute to those. Who killed these thousands of Sikhs, sir? Indian Army. Thank you. So at that point, he testified why they were planning this rally, and later. But he also said something about 36 Sikhs had been killed in March of 2000. Yes, and the way I read the record, Your Honor, is that he was trying to clarify why he was being held in Jammu Kashmir, as opposed to anywhere else in India. I think that he was trying to tie in the fact that this recent event happened, and he got the date wrong of when it happened. He initially said March 1997. Another thing that I didn't see, and I don't know if the IJA relied on this or not, but he said that he was in hiding in the May of 1999. Then he says, he testifies, I was living in hiding, but I was working on my farm. So you were hiding on your farm? Yes, I was hiding on the farm. And then he gets up a couple months later and gives, and organizes a rally and gives a speech at a rally while he's supposedly in hiding because he's in fear of the police. That scenario of events that he described happening in 1999, he was later clarified later in the record, and when he said, I was mistaken, this happened in 2000, after his arrest and release. Well, he was given many opportunities to correct these things along the way, and that the IJA didn't interfere, was patient. Excuse me, Your Honor. The IJA was patient, did not interfere with his testimony, did not interrupt him? Well, I believe that the immigration judge wanted to clarify each detail, and that's for one in the record, I believe. But I don't believe that he characterized the Petitioner's testimony in a completely accurate fashion. I think the Petitioner tried his best to testify about what exactly happened.  Well, I think the Petitioner's testimony, if he simply said nothing on, I believe it's, I think he stopped himself somewhere between page 90 and 100 to clarify his testimony, even though he hadn't been confronted with any inconsistency. But his application, it says, his application says that he was in hiding and unemployed in May of 99. Is that true? Did his application say that? Let me check that, Your Honor. I'm looking at the transcript of 139, which is being discussed. Well, I'll take the court's word for it, Your Honor. It says, your application for asylum says that in May of 1999 you were in hiding and that at that time you were unemployed. But he testifies that, in fact, he was working. He was not unemployed. And then he says, and they say to him, so that's not right either. No, it's not. I was working. And then they say, well, if you were in hiding, how come you were going to rallies? And he says, so you weren't really in hiding was the question. He says, I was working on my farm. And he says, you weren't really in hiding because you were making yourself known at the rallies. And he says, yes. So it's not true that you were in hiding. And he says, yes. It's not true that I was in hiding. Yes, Your Honor. So that would make his testimony inconsistent with his declaration. Right. And his direct testimony inconsistent with his later testimony. And so since there is an inconsistency, then the question is if it's material. I don't see how it's material if he's in hiding in 1999 and then comes out of hiding to participate in a rally. That would be consistent, I think, with his involvement in political activities. Let's assume that all of these things are simply a matter of confusion, that he was confused about the date of the event, the order of things that occurred at the event, the reason for having the event, what he was doing or not doing immediately preceding the event, and whether he was in hiding at the time of the event or near the event. If he was confused about each and every one of those things, wouldn't that be a legitimate reason for an I.J. to doubt credibility? No, Your Honor, because I think a correct finding in that situation where he could not establish his claims by his testimony or the documentary evidence that he submitted in support of his applications for relief, then the correct finding would be that he hadn't sustained his burden of proof in establishing his claim, not that he was untruthful. And so in this case, I think that because he was consistent about every other aspect of his case, his first arrest, his second arrest, about the beatings that he sustained at the hands of the Indian police, based on the length of time he testified that he was held in detention and other aspects central to those arrests, I think that it is unfair for the immigration judge to find that he was not credible in this case. I think that all the concerns that the immigration judge cited had nothing, could not be attributed to the petitioner's testimony. The ultimate problem here is whether somebody – I mean, what are we doing when we're making credibility determination? We're trying to figure out whether somebody has memorized a story or whether something's actually happened. And it seems to me that the record here has trademarks of a memorized story. For example, he tells a whole story about something that happened in 1999, and then when that doesn't – the time doesn't work, he says, oh, wait, that whole same story actually happened in 2000. Yes, Your Honor, and I would – Tells the exact same story as having happened after the next arrest instead of before it. That is very fair, Your Honor. However, the immigration judge would be in the best position to make that decision, and he could – the immigration judge had the power to – He did, but he was just completely confused. He did not enter a demeanor finding. He did not say that – I'm not saying it's a demeanor finding. I'm saying that he was telling stories in a rote fashion and – which were contradictory because they first applied to one period of time and then applied to another period of time. I don't read the immigration judge's decision that way, Your Honor. I apologize. But I think that he was just saying it was a hopeless conflict, that it was inconsistent, not that the petitioner was confused. In fact, the immigration judge cited on the record between pages 90 and 100, no, this is exactly what he said. This is what he unequivocally said. The immigration judge never said that the petitioner appeared confused on the record. He said no. He said this – he said one thing at one point, and he said something else. And the immigration judge clearly said that – What he said is as indicated above, that Respondent's testimony regarding some of the critical issues in this case wasn't hopeless conflict. Yes, Your Honor. What does that mean other than confused? That it was inconsistent, Your Honor. And is it different from inconsistent and confused? To me, Your Honor, yes. Okay. Thank you for your argument. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: B. Fletcher, Berzon, Trager